IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

FILED

JUL 0 1 2009

DE..... P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

AMADO SOSA-DOMINGUEZ )
REG. NO. 23513-057 )
RIVERS CORRECTIONAL INSTITUTION )
P.O. BOX 630 )
WINTON, NC 27986, )
 )
     Plaintiff, )
 )
vs. )
 )
THE GEO GROUP, INC. )
621 N.W. 53rd STREET )
SUITE 700 )
BOCA RATON, FL 33487, )
 )
G. SNYDER, Warden, )
Rivers Correctional Institution )
P.O. Box 630 )
Winton, NC 27986 )
 )
D. FARMER, Associate Warden (Programs), )
Rivers Correctional Institution )
P.O. Box 630 )
Winton, NC 27986 )
 )
B. MOORE, Counselor, )
Rivers Correctional Institution )
P.O. Box 630 )
Winton, NC 27986 )
 )
D. BLEVINS, Chaplain, )
Rivers Correctional Institution )
P.O. Box 630 )
Winton, NC 27986, )
 )
     Defendants. )

5: 09-CT-3116

CIVIL NO. _____

JURY TRIAL IS DEMANDED

VERIFIED CIVIL COMPLAINT FOR VIOLATIONS OF RELIGIOUS RIGHTS,
NEGLIGENCE, DISCRIMINATION & BREACH OF CONTRACT

-1-

COMES NOW, the Plaintiff, AMADO SOSA-DOMINGUEZ, appearing herein Pro Se, and hereby files this Verified Civil Complaint for Damages with Jury Trial Demand for violations of his religious rights, negligence, discrimination and breach of contract.

I.

## PRELIMINARY STATEMENT

The Plaintiff brings this suit complaining of the actions of the named defendants in engaging in various actions and omission to violate the plaintiff's practice of his faith. Plaintiff is a Muslim. He is incarcerated under the care and custody of the named defendants. In this action, the plaintiff alleges and will show that the defendants had the obligation to provide the plaintiff with a diet which would conform to his religious dietary laws but that the defendants failed to do so in violation of federal law, the contract between the defendatns and the Bureau of Prisons of which the plaintiff is a third party beneficiary, and did so negligently and/or willfully.

II.

## JURISDICTION

This court has both venue and subject-matter jurisdiction over this action under the provisions of Title 28, United States Code, § 1332(a). The amount in controversy exceeds the amount of $75,000.00 and the plaintiff and defendants are completely diverse in citizenship.

This court also has subject matter jurisdiction over this action under the provision of the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

-2-

This court has Supplemental Jurisdiction over the state law claims
under 28 U.S.C. § 1367.

Venue is proper in this district since all acts and omissions complained
of occurred within this court's judicial district.

## III.

## PARTIES

AMADO SOSA-DOMINGUEZ is the Plaintiff in this action. Amado is an inmate
at the private, for-profit prison operatred by Geo Group, Inc. located at 145
Parker's Fishery Road, Winton, North Carolina 27986. Amado is a federal inmate
under the care and custody of the Bureau of Prisons. At the present time, Amado
claims to have the intention to reside at the following address upon release and
claims to be the citizen of the State of Nevada:

5206 Sandstone Drive
Las Vegas, NV 89142

The Plaintiff current mailing address is:

Amado Sosa-Dominguez
Reg. No. 23513-057
Rivers Correctional Institute
P.O. Box 630
Winton, NC 27986

THE GEO GROUP, INC. is a Defendant in this action. The Geo Group, Inc.
(hereinafter "Geo") is a private, for-profit corporation incorporated in Florida
doing business in Winton, North Carolina operating and owning the Rivers
Correctional Institution ("RCI").

G. SNYDER, D. FARMER, B. MOORE, AND D. BLEVINS are all Defendants in this
action. Each of these individuals are employees of Geo working at the RCI
facility in Winton, North Carolina. G. Snyder is employed as the Warden of
the facility. D. Farmer is employed as the Associate Warden of Programs at

-3-

the facility. B. Moore is employed as a counselor at the facility. D. Blevins
is employed as the chaplain at the facility. Each of these defendants are
alleged to be citizens of the State of North Carolina. The work address of
each of the defendants is as follows:

Rivers Correctional Institution
145 Parker's Fishery Road
Winton, North Carolina 27986

### IV.

### FACTUAL ALLEGATIONS

1. The plaintiff, Amado Sosa-Dominguez (hereinafter "Plaintiff" or "Amado")
is a Muslim inmate who follows the Hanbalite School of Islamic Jurisprudence.

2. The Hanbalite School of Islamic Jurisprudence is one of the four major
schools of jurisprudence in the Islamic faith.

3. As a central tenet of the plaintiff's religious beliefs, he believes
that he must conform his diet according to specific dietary laws. Plaintiff's
religious beliefs require him to eat only foods which are "halal" and prohibit
him from eating any foods which are "haram". (The term "haram" means prohibited
or unlawful). In order for foods to be halal, the foods must conform to specific
religious laws.

4. "The Hanafites and Hanbalites maintain that, for a Muslim, the food
of the People of the Book is subject to the same restrictions which has been placed
by the Qur'an and the Sunnah on the food of the Muslims. Neither in our own
homes nor in the homes of Jews and Christians may we eat of the animal which
iskilled in some manner other than slaughtering and over which Allah's name
has not been mentioned." Al-Fiqh 'alal Madhahibil 'Arab'a, Vol. 1, pp. 726-730.

5. Plaintiff maintains the belief of consuming only Halal foods. "Halal

-4-

Case 5:09-ct-03116-D   Document 1   Filed 07/01/09   Page 4 of 13

means that which is authorized by Islamic laws (fiqh). At issue in this case is food from animals slaughtered according to certain Muslim rituals." (Quoted from Hudson v. Dennehy, 568 F.Supp.2d 125, 127 fn. 3 (D.Mass. 2008).

6. The Bureau of Prisons cites as its authoritative source on what is lawful and unlawful for Muslims the book, "A Handbook of Halal and Haram Products" by Zaheer Uddin. Exhibit One.

7. According to Zaheer Uddin in the book, "A Handbook of Halal and Haram Products", "From among the schools of jurisprudence, the Malikites, Hanafites, and the Hanbalites [Plaintiff's school of jurisprudence] agree that the animals over which Allah's name has not been mentioned are unlawful."

8. According to the contract between Geo Group, Inc. and the Bureau of Prisons, Geo is required to conduct its provision of religious services as established by the Religious Freedom Restoration Act (RFRA). Exhibit Two (copy of Page 30 of the contract with Geo and the BOP).

9. The plaintiff is an intended third party beneficiary of the contract between Geo Group, Inc. and the Bureau of Prisons.

10. The policies implemented at RCI mandate that the prison officials must provide inmates at the prison with foods which conform to their specific religious dietary laws. RCI Policy No. 23.001, VI.E. and i states that "Religious meals shall include but not limited to vegetarian, kosher, or ceremonial meals. All religious meals must be approved by the Chaplain. Inmates whose beliefs require the adherance to religious dietary laws will be approved by the Chaplain." Exhibit Three.

11. Under the religious dietary laws the Plaintiff follows, not only must foods be Halal but that they must be maintained as Halal throughout the

-5-

entire period from the slaughtering of the animal to the time it is eaten. Thus, foods which come into contact with any Haram foods or ingredients or items such as cookware which were used to prepare Haram foods renders that food Haram even if it initially was Halal. Exhibit Four.

12. In order to abide by his religious dietary requirement, the plaintiff made many requests to prison staff at RCI, both verbally and orally, to be provided a Halal diet. All of these requests were denied.

13. Under plaintiff's religious beliefs, if he were to consume Haram foods, it would be a serious sin and defile his body rendering other acts of worship such as prayers unacceptable.

14. Although RCI denied plaintiff his dietary requests in accordance with his faith, it accommodates other religious faiths and their dietary requirements. The Rastafarian inmates are provided a kosher diet for their beliefs. The Jewish inmate are provided a kosher diet for their beliefs.

15. RCI officials informed plaintiff that his only option was to receive the vegetarian meal served off mainline. The vegetarian meal offered to plaintiff off mainline is not Halal. The meals off mainline are all prepared together such that vegetables are cooked and prepared in the same pots and pans and using the same utensils used with the Haram foods ensuring cross-contamination. Moreover, the vegetables provided are not certified Halal and on many occasions, contain ingredients which are not halal.

16. RCI officials were informed by plaintiff of the fact that the vegetarian offered diet off mainline was not considered halal but they refused to change their position of offering plaintiff only this option.

-6-

17. In order for the plaintiff to eat, he was thus forced to eat haram foods in violation of his religious beliefs.

18. The plaintiff is indigent and cannot afford to bypass the food service and sustain himself of commissary items.

19. The prison had readily available alternative to it that it refused to provide. While the kosher religious meal plan is a predominantly vegetarian meal with pre-packaged kosher meats, the plaintiff was denied the option of receiving the vegetables from the kosher plan with a Halal pre-packaged meat items substituted for the kosher meat item. The vegetables on the kosher plan are kept separate from the mainline items including the mainline vegetables and thus, are free from cross-contamination. Thus, the prison officials required the plaintiff to eat vegetables subjected to cross-contamination or with haram ingredients when it could have provided plaintiff with the vegetables from the kosher plan. There was no legitimate reason for such actions.

20. Zaneer Uddin in his book, "A Handbook of Halal and Haram Products" lists many products according to whether they are Haram or Halal. In the list, it shows that even non-meat products are Haram due to the contents of the product and the ingredients. Thus, the prison officials' broad classification declaring all vegetarian meals Halal was known by these prison officials to be an incorrect statement and their actions in implementing such a policy solely to avoid providing a Halal diet was conduct which violated the plaintiff's rights under the RFRA, the RLUIPA, and the Constitution.

21. On February 19, 2009, the plaintiff submitted an "Inmate Request To Staff" addressed to Defendant Blevins, the chaplain of RCI and the official required to approve religious dietary requests under the aforementioned RCI policy statement,

-7-

in which the plaintiff explained his religious dietary laws in great detail, provide Chaplain Blevins supporting documentation, and asked that he (plaintiff) be given a Halal diet. **Exhibit Five.**

22. On February 23, 2009, Defendant Blevins informed plaintiff in response to the inmate request to staff member that the plaintiff should direct his concerns to the Food Services Department. **Exhibit** five.

23. On February 25, 2009, the Plaintiff submitted an "Inmate Request to Staff" to the Food Service Department as instructed by Defendant Blevins asking to be provided a Halal diet. **Exhibit** six. . In this request, the plaintiff again explained his dietary laws in great detail and provided supporting documentation.

24. On February 26, 2009, Ms. Chamblee, the Food Service Department Secretary, replied to the plaintiff's request in which she stated, "Any religious diet order must be approved by the Chaplain. The Chaplain must notify the Food Services Department concerning the special diet." **Exhibit** six..

25. After being directed to address his concerns back to the Chaplain where he had initially started, the Plaintiff submitted another "Inmate Request to Staff" on March 3, 2009 to Defendant Blevins asking that he be notified as to the outcome of the investigation into plaintiff's request which the chaplain had previously promised and again requested a Halal diet. **Exhibit** seven.

26. On March 13, 2009, Defendant Blevins answered the March 3, 2009 "Inmate Request to Staff" and denied the plaintiff's request stating that the meals at RCI met the requirements of plaintiff's faith and instructed the plaintiff to eat the vegetarian meals off mainline. **Exhibit seven.**

27. The answer by Defendant Blevins on March 13, 2009 ignored the plaintiff's dietary requirements that all foods, including vegetables, must be Halal free from cross-contamination.

-8-

28. Defendant Blevins knew that the plaitniff's religious dietary needs could not be accommodated by the vegetarian meals off mainline due to the cross-contamination and the fact that even vegetarian items had to be free from Haram ingredients in their packing and preserving process. The vegetarian meals off mainline were not certified to meet any religious standard. See Exhibit 8 (copies of labels off the food items).

29. Defendant Blevins also denied the plaintiff's request to be provided Halal meats as part of his diet although he approved other faith groups religious meals with meats in compliance with their faiths.

30. On March 19, 2009, the plaintiff submitted an Informal Resolution request to Counselor Bowswer in which the plaintiff narrated the chain of events and requested that he be provided a Halal diet as required by his religious beliefs. Exhibit nine

31. On March 24, 2009, Defendant Moore responded to this informal resolution request by informing Plaintiff that she had conducted an investigation into the plaintiff's issues and denied the plaintiff's request. Exhibit nine a Defendant Moore conformed her answer to the official RCI policy and failed to make any independent investigation as required. Defendant Moore acted to substantially interfere with plaintiff's rights to receive a Halal diet.

32. On March 29, 2009, the Plaintiff submitted a Step One grievance to Defendant Farmer in which the plaintiff appealed the denial of his religious diet request. Plaintiff explained in great detail in this Step One to Defendant Farmer the requirements of his religious faith to eat only a Halal diet, the laws as regards Halal foods, the religious laws showing that cross-contamination renders the foods Haram, and supporting documentation. However, Defendant Farmer denied this request and refused to provide the plaintiff a Halal diet. Exhibit Ten.

-9-

33.  On April 14, 2009, the Plaintiff subnmitted a Step Two grievance to Defendant Snyder, the warden of the prison, explaining to him in great detail and providing him supporting documentation in regards to the plaintiff's dietary laws, the laws in regards to the Halal and Haram foods, and explaining to him why the accommodations as suggested by Defendants Blevins, Moore, and Farmer failed to comply with his religious dietary requriements.  **Exhibit Eleven.**

34.  On April 21, 2009, within 24 hours of the time the April 14, 2009 Step Two greivance was docketed as filed by the prison, Warden Snyder denied the request.  Plaintiff alleges that such denial was a rubber stamp denial without any regard to the plaintiff's religious requests.

35.  RCI policy 23.001 V states that "the religius services department will ensure equal status and protection for all religoins."

36.  The actions of each defendant in accommodating only the Jewish and Rastafarian inmates' religious dietary requirements and refusing to accommodate plaintiff violated the aforecited RCI policy number 23.001 as well as the Equal Protection Clause of the Constitution.

37.  RCI is required to abide by the Equal Protection Clause of the Constitution pursuant to its contract with the BOP in its treatment of the plaintiff.

38.  As a direct result of the actions of these named defendants, the plaintiff has suffered a violation of his rights.  The plaintiff has been forced to eat foods prohibited by his faith simply to live.  Such a choice between eating and violating his religious tenets and not eating has placed a substantial burden upon plaintiff's practice of his religious beliefs.

-.U-

39. The plaintiff is a third party beneficiary of the contract between Geo Group, Inc. and the BOP.

40. Geo is directly responsible for the actions of its agents and employees, Blevins, Moore, Farmer, and Snyder. Each of these individually named defendants acted under the auspices and authority of Geo.

41. The actions of Geo and the individually named defendants, Blevins, Moore, Farmer, and Snyder, constituted a breach of the contract to abide by the RFRA and all caselaw, statutes, and the Constitution of the United States.

V.

CLAIMS FOR RELIEF

42. Paragraphs 1 through 41, supra, are hereby incorporated herein as if fully set forth herein.

**COUNT ONE: INJUNCTIVE RELIEF:** Plaintiff requests that this court order Geo Group, Inc. and the individually named individuals to provide the plaintiff with a Halal religious diet as mandated by his faith.

**COUNT TWO: VIOLATION OF THE RELIGIUS FREEDOM RESTORATION ACT.** Plaintiff demands compensatory, punitive, and nominal damages from each of Geo, Blevins, Moore, Farmer and Snyder in an amount of Two Million Dollars as determined by a jury for violations of the RFRA.

**COUNT THREE: VIOLATION OF THE RLUIPA.** Plaintiff demands compensatory, punitive and nominal damages from each of Geo, Blevins, Moore, Farmer, and Snyder in an amount of Two Million Dollars for violations of his rights under the Religious Land Use and Institutionalzied Persons Act.

**COUNT FOUR: VIOLATION OF THE EQUAL PROTECTION CLAUSE.** Plaintiff demands compensatory, punitive and nominal damages from each of Geo, Blevins, Moore,

-11-

Farmer and Snyder in an amount of Two Million Dollars for violations of his rigths under the Equal Protection Clause of the Fifth Amendment.

**COUNT FIVE: BREACH OF CONTRACT.** Plaintiff demands compensatory, punitive, and nominal damages from each of Geo, Blevins, Moore, Farmer, and Snyder in an amount of Two Million Dollars for each of the following breaches of contract for which the plaintiff was an intended third party beneficiary:

a) Breach of contract by failing to abide by the RFRA;

b) Breach of contract by failing to abide by the RLUIPA;

c) Breach of contract by failing to comply with the Equal Protection Clause of the Fifth Amendment;

d) Breach of contract by failing to provide plaintiff a halal diet;

e) Breach of contract by not complying with the anti-discrimination laws of the United States and the State of North Carolina.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Plaintiff has fully exhausted all available remedies in this case. The plaintiff has completed all phases of the administrative remedy process at RCI and copies of these grievances are attached to this complaint as Exhibits 11, 12 and 13.

### CONCLUSION

The plaintiff has been denied his basic right to practice his religious faith free from hinderence and interference by the above named prison officials. These prison officials have received millions of dollars from taxpayers with the promise that they would accommodate such basic beliefs such as providing

inmates within its custody their religious freedoms including a basic religious diet. However, after receiving these millions of dollars, these above named defendants have failed to fulfill their promises.

The plaintiff should be given the damages he asks for in his prayer for relief.

### PRAYER FOR RELIEF

The plaintiff respectfully prays that this court order the following relief:

1. Grant Injunctive Relief as requested.

2. Grant all compensatory, punitive, and nominal damages as requested in Counts Two through Five, supra.

3. Grant such further relief as justice demands.

4. Set this case for jury trial.

5. Award attorney fees, costs, and such other damages as awardable.

Respectfully submitted on this the $\underline{29}$ day of $\underline{June}$ , 2009.

Amado Sosa-Dominguez
Reg. No. 23513-057
Rivers Corr. Institute
P.O. Box 630
Winton, NC 27986

-13-